We move to the fourth case this morning, LHO Chicago River v. Rosemoor Suites. Good morning. Mr. Villanueva? Yes. All right. You may proceed. May it please the court, first of all, thank you for hearing us this morning. This is not the first time that we have been before this body, it is the second time. We were here two years ago. And if I can reframe the issue here, for, you know, Judge Kokoros was put on the bench on September 29, 2018 by President Carter. He has been there for 40 years, and for 40 years he has ruled the same way in regards to these Lanham Act cases for damages. And the Lanham Act is essentially the same since 1946. Recently, a case came down, this Act case that actually complete these tasks were going to be done. It went from essentially a subjective test. Mr. Villanueva, you are breaking up for me. I don't know if you're breaking up for Judge Kaney and Judge Mannion, but you are breaking up for me. Oh, as everybody, can everybody hear me? Yes. Thank you. Is this better? Yes. Okay. Can you hear me? Yes. I can hear. Judge Mannion? I can hear him. All right. You may proceed. Thank you. I'll try and be louder. So what I was saying is for 80 years and now 40 years, Judge Kokoros has done things one way in regards to these fees for the trademark cases. The Supreme Court was clear as it changed the standards substantially. The Supreme Court said, we want to make sure that weak cases result in a grant of exceptional status and a grant of fees. The case Octane was a patent case, not a trademark case. But in that case on remand, the judge looked at the strength of the patent case. It looked at what was the case they brought forward. A patent case can be weak for multiple ways. A patent can be invalidated, partially invalidated, inventorship problems can arise. In the case of Octane, actually the case itself, the underlying case itself was very weak. They had brought this for competitive reasons and half the terms of the claim not really found in the infringing article. Here we have a case which is a trademark case. Now some trademarks are strong and some trademarks are weak as a matter of law. And this is by far the weakest conceivable possible case that can be ever filed. It's weak on multiple reasons, multiple faces. Number one, which is the most obvious, is the mark itself. Hotel Chicago is geographically descriptive for a hotel in Chicago. Second, as we've explained, there was a precedent in this circuit from this court, the platinum case, that specifically said in order to reach a certain amount of secondary meaning to make these marks alive, we need to hit, here's the factors. This case, when it was filed, met none of these factors. Not one, none of them. Here, the other side has provided no evidence whatsoever as to why this case is actually strong. That's the burden. They have to say, this is a normal mark, this is a strong mark, and this is what Judge Kokor should have done. He should have looked at Hotel Chicago and he should have said, well, why would this mark, this brand, why would it be strong or not weak? Here, when we defeated- You are, Mr. Villeneuve, you're absolutely correct that Judge Kokor has been a judge for over 40 years. But what that means to me is that he has undoubtedly handled hundreds of preliminary injunction cases. Yes. He assessed the case, he reviewed, he rejected Judge Cox's recommendation as to the preliminary injunction, and he considered the matter of fees twice. It seems to me that no one was better situated to make a judgment as to whether the case was exceptional or not. How are we, do you think, and you can help us with this, in a position to reweigh the 20-plus factors you have cited and say he abused his discretion? And as far as platinum, you noted in your reply brief, as I recall, that Judge Cox was never given the platinum controlling precedent to help her review. And I take it that means that neither LHA nor your client cited the platinum mortgage case to Judge Cox. And if so, how would that shared omission bear on any fee assessment? So I'm sorry, it's a two-part question. So, well, thank you for the question. Number one, the platinum case is a good example. Platinum, when you're selling home mortgage, it is not clear that that mark is weak, that that mark doesn't function, and that that mark does not have secondary. One can argue that when the platinum plaintiff went to war, it genuinely believed that it owned rights over that word, which is completely different than the term Hotel Chicago. Here, what is really interesting is when the judge at a preliminary hearing was given some information, there was a ton of information. And I remember we were arguing that this mark was actually generic, that Hotel Chicago for a hotel in Chicago is what people search on Google. If you want to go to Denmark, you put Denmark Hotel, you put the name of the city. So whenever you, the mark is actually what someone would say and search, the mark is generic. But that was the fight in front of the magistrate judge. Now, in regards to Judge Kocouras being well-suited, yes, he has done this many times, but the law shifted under his feet, under this court's feet, and this court has used this case in order to change and apply octane to this circuit. So the change is significant. And as we've explained in our brief, Judge Kocouras is just, having done something for 40 years, it is not natural because these cases are complicated to pivot and say, okay, now what I need to factor is if the word Hotel Chicago by themselves as a trademark, if that is weak, if the hotel would have been called the Drink Hotel. Judge Kocouras denied in the fee request, secondarily, in a 10-page decision, he looked to octane, he articulated the standard, he cited the non-exclusive list of factors that our court had identified as ones bearing on the assessment and applying the octane standard, Judge Kocouras found that this case did not stand out from other cases. Actually, that is not the way we see it. The best example is the evidence, that little email that is incriminating that says that even the appellee, their own management believed that this mark couldn't be secured, that this mark was so weak, it couldn't even be filed. That email, when the judge had to look at it, he didn't even look at it for what it says in regards to the weakness of this mark, which was our argument. We're like, you have to look at the weakness of a mark. Is Hotel Chicago strong or weak? They didn't do that. He didn't do that. I'm going to look at the intent. Here, the intent, he said, well, this doesn't say bad faith, doesn't mean that they filed the case wrongfully. So here, the entire opinion is peppered with this good faith, bad faith argument. Of course, if it was a bad faith case that was filed, yes, we get the fees. But now octane says, even in good faith filings, if you show up to the dance and you are not prepared and your mark is weak or your patent case, substantially the patent case itself is weak, you end up owing fees. The way I viewed what he said was that he was simply making a reasonable point that may have nonetheless proceeded in the expectation that it would be able to establish a distinctive secondary meaning over time with sufficient marketing and other efforts. And the author of the email wasn't an attorney. So the email should not necessarily be screwed as an admission as to the weakness. To answer your question, if I can, even if my time has run out. The magistrate judge and the judge, both of them, when they were faced with that information, specifically says, there's not enough here. You have an uphill battle and you need to overcome that. And they specifically told this plaintiff saying, well, you can go out. You have the time. This was August. You have the time to go out and get a survey. If you believe there's secondary meaning, there's multiple ways to bring in evidence to reinforce this case. They did none of that. And so, therefore, they never even tried to correct. And here at this fee petition, the judge, there was no evidence on the other side. There's not a piece of paper. There's not a stipulation. There's not a rebuttal as to what this email means. Even the other side doesn't want to be on the record with an affidavit saying, yes, I agree with what the court says. This is not the intent of our people. But that being said, again, which is really hard to understand, that email is brought in as evidence that the mark, Hotel Chicago, is weak. It's not a hotel that's called the Drake Hotel or any other. When you pick two words that are geographically descriptive, like LaSalle restaurant in LaSalle Street, the problem is that's not a mark. That is a weak, inherent weak mark. It was common law. It wasn't filed. We provided tons of evidence. We provided the USPTO two weeks before this case was filed, told us you can't get this mark. It's descriptive. And so there was red flags all around. This is the weakest case. And if this case is not given, honestly, there is not one trademark case in the Seventh Circuit that deserves fees. This is the weakest thing that could be filed. Thank you, counsel. Ms. Wilbert. May it please the court. Johanna Wilbert appearing on behalf of LHO Chicago River. Nothing that Rosemore identified rises to the level of an abuse of discretion. While Rosemore disagrees with the decision, that is not the standard of review before us. This is an appeal from the district court's discretionary evaluation of whether the case was an exceptional case that stood out from the rest for the purposes of fee shifting. And it must be evaluated under an abuse of discretion standard. Under the abuse of discretion standard, the relevant inquiry is not whether the opposing party or even the reviewing judges would have ruled differently, but rather whether any reasonable person could agree with the district court. Here, there isn't even room for reasonable disagreement. The decision was correct. LHO seeks an affirmance of the district court's decision because the district court applied the correct legal standard and provided a reasoned basis when evaluating the merits and the litigation conduct. First, addressing the legal standard. The district court correctly applied octane fitness. The decision itself contradicts Rosemore's argument that the district court applied the wrong standard. The decision both cites octane fitness and structures its analysis around the two prongs identified in octane fitness. In the decision at appendix A4, Judge Koukouras cites octane fitness as the legal standard he is applying. Judge Koukouras then goes on to apply the standard using the two-pronged approach. He provides his conclusions regarding the strength of the party's litigation position at appendix pages A5 to A7. He also provides his conclusions about the manner of the litigation conduct at pages A7 through A12. Moreover, in applying this framework, Judge Koukouras repeatedly uses language and factors cited in octane fitness. On appendix A7 through A8, he considers issues including whether there was an improper motive and whether the case was brought for an improper purpose. At appendix A12, he also considered whether Rosemore presented evidence of litigation misconduct. The district court explicitly cited and applied the correct legal standard in its decision. As a result, this appeal should be reviewed under an abuse of discretion standard. Addressing the district court's discretionary application of the law, Rosemore has not identified, much less met its burden of proving an abuse of discretion. Under the octane fitness standard, a case may be exceptional if it stands out from others as a result of an extreme weakness of the merits of a party's position or because of improper litigation conduct. When evaluating the relative merits of the case, the court asked a question about platinum, and platinum was in fact cited to magistrate Judge Cox on page 14 of Rosemore's response in opposition to LHO's motion for a preliminary injunction. This can be found at the district court docket entry 34. As a result, platinum was a case that was before the district court at every stage of the case. Rosemore is simply wrong when it says that platinum is somehow controlling. Platinum addresses a different legal theory of trademark rights that is not present here. Specifically, the plaintiff in the platinum case argued that it had trademark rights because it believed its mark was suggestive. Because of this legal theory, the plaintiff did not submit meaningful evidence on the issue of secondary meaning to the district court. This distinction is addressed in Judge Kacouras' decision at issue here. In considering and rejecting Rosemore's platinum argument, Judge Kacouras noted on provided evidence of significant widespread marketing efforts, global promotion, and sales volume to demonstrate the mark had acquired secondary meaning. Judge Kacouras then went on and at appendix A9 discussed favorable precedents to LHO's position and ultimately rejected Rosemore's platinum argument. Forgive me. Doesn't our platinum mortgage decision make fairly clear that without consumer testimony or consumer surveys, LHO had only a negligible chance at establishing secondary meaning? I know, Your Honor. That's not how we review platinum, especially given cases decided since platinum. In particular, if I could direct the court to Eli Lilly v. Arla Foods. That is this court's decision from 2018 that holds it is not feasible to require a Lanham Act plaintiff to conduct full-blown consumer surveys in the truncated time frame between filing a suit and a preliminary injunction. Also, if I could direct this court to its decision— operative. It doesn't say some or consumer testimony. It says full-blown. That is not the same. With respect, Your Honor, numerous courts have held that a survey is not required at the preliminary injunction stage. And in evaluating the facts before him, Judge Kokoris noted the evidence of secondary meaning that was submitted before the court. And that's also consistent with the Johnny Blastoff v. L.A. Ram decision of this court, which held that a claim for infringement of an unregistered mark is actionable under the Lanham Act, Section 43A. So if there is a showing of secondary meaning, an unregistered mark can be actionable. And when evaluating the evidence presented at the preliminary injunction hearing, Judge Kokoris went on to note that LHO provided evidence and relied on Seventh Circuit President to argue in good faith that it was entitled to a preliminary injunction. Here's something else that Judge Kokoris noted. He certainly seemed to agree that the behavior of LHO's Rule 30b-6 witnesses was, quote, bad. One doesn't hear a judge use that term every day. Why does that behavior not tilt the scale toward this being an exceptional case? Well, Your Honor, the litigation conduct is to be taken in the totality of the circumstances. And here, Rosemore makes more of the litigation conduct on appeal than it ever did below. Nothing of the alleged bad conduct ever rose to the level of a motion to compel or a motion before the district court. But even assuming that Rosemore is correct in its characterization, Judge Kokoris went on and explicitly considered this conduct and held on Appendix Page 11 that LHO's actions were not so egregious and reprehensible to make the case stand out from others and merit fee shifting. Here, Judge Kokoris is the very judge that ruled against LHO on the preliminary injunction, but given his firsthand experience with the facts of the case, ruled that this did not rise to the level of an exceptionally weak case or exceptionally bad conduct, and in his discretion under a totality of the circumstances, concluded that fees were not appropriate here. Under the abuse of discretion standard, his factual determinations should be given deference. And simply taking a different view of the facts does not make Judge Kokoris' ruling an abuse of discretion, nor should selective second-guessing of individual factual determinations. The district court's ultimate decision, based on the culmination of many factual determinations outlined in its decision, was that the case did not stand out from the others and did not warrant fee shifting. And Rosemore has not identified any precedent for what it is asking the court to do here, which is reverse the district court who lived with the case for failing to award fees in the exceptional case determination in the context of a Lanham Act case. Indeed, it is the exceptional appeal in which a court overturns a district court's exceptional case evaluation. Now, opposing counsel raised the issue of the email, but the district court addressed this evidence explicitly on pages A6 and A7 of the appendix and concluded that the email drafted years before the lawsuit was filed at a time that was significantly different from the time of the lawsuit. And in between the email and the filing of the lawsuit, LHO was recognized to have had widespread marketing efforts, global promotions, and significant sales volumes that could evidence secondary meaning. Considering the email in light of other evidence submitted is exactly what it means to consider the totality of the circumstances as instructed to do by the Octane Fitness Standard. Thus, after making this consideration of all the circumstances, the fact that Judge Koukouras disagreed with Rosemore's assessment is not an abuse of discretion. As a result, we ask the court to affirm the decision below. Thank you. Thanks to both counsel and the cases taken under advisement.